UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS

FILED
SEP 1 9 2023
Clerk, U.S. District Court
Eastern District of Texas

| CRAIG CUNNINGHAM, Plaintiff, v. Telemarketers calling from 401-252-5229 and other numbers and John/Jane Does 1-5 Defendant | § § § § § § § § § | 4:19-cv-00494-ALM-CAN 4:23-CV-00216-SDJ-AGD |
|---|---|---|

**Plaintiff's Amended Complaint**

**Parties**

1. The Plaintiff is Craig Cunningham and natural person and was present in Texas for all calls in this case in Collin County at 3000 Custer Road, ste 270-206 Plano, Tx 75075.

2. Defendant **Yakim Jordan** ("Manasseh Jordan Ministries") is a natural person who can be served at 3401 NE 165th Street, North Miami Beach, FL 33160 **708 3rd Ave, Floor 6, New York, New York, 10017.**

3. **Kickback, Inc., dba Prank Dial** is a New York Corporation and can be served via corporate officer and registered agent Rifayet Saleh a natural person and corporate officer of Kickback, Inc and can be served at 1 West Starlight Drive, Hopewell Junction, NY 12533

4. **Rifayet Saleh** is a natural person and corporate officer of Kickback, Inc and can be served at 1 West Starlight Drive, Hopewell Junction, NY 12533

5. **Thinq Technologies, Inc.** is a North Carolina corporation that is operating from 5420 Wade Park Blvd., ste 100, Raleigh, NC 27607 and can be served via corporate officer Aaron Leon 5420 Wade Park Blvd., ste 100 Raleigh, NC 27607.

6. **Aaron Leon** is a natural person and can be served at 5420 Wade Park Blvd., ste 100 Raleigh, NC 27607

7. At all times herein mentioned, Defendants conspired by means of mutual understanding, either expressly or impliedly, among themselves and others in engaging and/or planning to engage in the activities detailed herein to accomplish the wrongful conduct, wrongful goals, and wrongdoing.

8. John/Jane Does 1-5 are other liable parties currently unknown to the Plaintiff.

### JURISDICTION AND VENUE

9. <u>Jurisdiction</u>. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

10. **<u>Personal Jurisdiction.</u>** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and the actions of the corporate entities are directed from a Texas resident, Steven Sledge.

11. This Court has specific personal jurisdiction over the defendants because the calls at issue were sent by or on behalf of the defendants knowingly to the Plaintiff after service of this lawsuit on August 22nd, 2019 upon MJ Ministries Spreading the Gospel, Yakim Jordan and several other defendants. These Defendants called the Plaintiff some 39 times after service of

this lawsuit, knowing they would reach a Texas resident and knowing that the Plaintiff didn't want to recieve calls from them, including the very same number listed at the bottom of the complaint.

12. Calling after being served with a lawsuit complainig about illegal robocalls is more than sufficient notice that the calls are unwanted and who they are calling. This is more than sufficient to establish personal jurisdiction.

13. Calling 100+ times over a year is sufficient to establish personal jurisdiction.

14. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  residing in the Eastern District of Texas when he recieved a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

15. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

16. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

17. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

18. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line

using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

19. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

20. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

21. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

22. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

23. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

24. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prere-

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

corded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

25. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

26. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

27. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

28. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## Actions and Liablity of Yakim Jordan

29. Defendant JORDAN is personally liable under the "participation theory" of liability because he is the Principal owner of the now-defunct Manasseh Jordan Ministries, knew of Manasseh Jordan Ministries' violations, has been sanctioned for these violations by numerous state governments, state attorneys general, and the Federal Communications Commission, and directed employees and/or agents of Manasseh Jordan Ministries to continue making those violations.

30. In addition, it is Defendant JORDAN's voice on each of the prerecorded telephone calls Plaintiff received, so as to essentially have made the calls himself. This is because JORDAN authorized and oversaw each of Manasseh Jordan Ministries' telemarketing processes. In fact, it was his idea to begin marketing Manasseh Jordan Ministries' via illegal telemarketing calls. Furthermore, JORDAN is also personally liable because he was responsible for ensuring Manasseh Jordan Ministries' employees' TCPA compliance and observing corporate formalities, which he admits he does not do

31. Plaintiff notes this is the second time he has sued Yakim Jordan for the offending calls in this district. Plaintiff previously sued this defendant in Cunningham v Manasseh Jordan Ministries, Inc., et al 4:2019-cv-0494 EDTX 2019 for the exact same conduct of unwanted robocalls pitching salvation through religion as long as the Plaintiff paid money to the defendant during the robocall.

32. Plaintiff nots that the Defendant has been sanctioned by the FCC and Texas Public utilities comission for making unwanted robocalls in the past.

33. Furthermore, the defendants engaged in perjury in the prior litigation lying about placing over $50,000 dollars for robocalling minutes to a telecom.

34. Yakim Jordan has taken direct transfers of over $100,000 in cash from this enterprise directly for his personal participation in the robocalling racket.

### The Texas Business and Commerce Code 305.053

35. The Texas Business and Commerce code has an analogus portion that is related to the TCPA and was violated in this case.

36. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### FACTUAL ALLEGATIONS

37. The Defendants have placed multiple telemarketing calls to the Plaintiff's cell phones in an attempt to solicit donations and making over the top religious claims. Defendant Yakim Jordan claims to be a prophet and can raise the dead for a mere donation of $1,000 among other sensational claims and has appeared with faith healer Benny Hinn on multiple occasions, who limits his small miracles to merely curing cancer and other serious diseases.

**Alleged calls to the Plaintiff and violations of 47 USC 227(b) and Yakim Manasseh Jordan**

38. Mr. Cunningham received several calls from a variety of spoofed caller ID's that contained a pre-recorded message and were initiated using an automated telephone dialing system before filing the current case:

| Phone number | Date | Notes |
| --- | --- | --- |
| 401-252-5229 | 09/20/2020 | |
| 401-252-5229 | 09/20/2020 | |
| 405-383-6592 | 09/15/2020 | |
| 225-460-3561 | 09/11/2020 | |
| 401-252-5319 | 09/08/2020 | |
| 223-207-2799 | 09/01/2020 | |
| 423-214-3985 | 08/25/2020 | |
| 205-318-2460 | 08/30/2020 | |
| 213-406-7096 | 02/20/2021 | |
| 213-320-1386 | 02/17/2021 | |
| 954-226-3817 | 05/03/2022 | Live call |

| | | |
|---|---|---|
| 615-231-5894 | 05/03/2022 | prank dial |
| 385-446-0208 | 05/03/2022 | prank dial |
| 615-453-1864 | 05/03/2022 | prank dial |

39. Any reasonable person would be on notice that they should stop calling a person who has sued them for unwanted telemarketing calls.

40. Furthermore, the calls initiated in 2022 were deliberately harassing calls including one from the 954 number that included death threats to the Plaintiff.

41. Defendants hired the services of kickback Inc., dba Prak Dial and Rifayet Saleh to make the harassing calls using the PrankDial platform. Prankdial is a platform designed solely to make harassing and annoying phone calls containing a pre-recorded message and are initiated using an automated telephone dialing system. There is no legitimate use for this service.

42. The Plaintiff is in the process of obtaining his call records and shall provide an updated supplemental statement of the calls alleged. The calls were on behalf of each of the defendants in this case soliciting the Plaintiff to give money to the Defendants. The calls had a delay of 3-4 seconds of dead air before the pre-recorded message began indicating the calls were initiated using an ATDS. The Plaintiff recieved calls on behalf of the defendants by 3rd party telemarketers for both direct and vicarious liability in this case.

43. The calls all contained multiple different pre-recorded messages recorded by Defendant Yakim Jordan in his own voice each day.

44. The Plaintiff recieved multiple calls from multiple spoofed and non-working caller ID's all designed to trick consumers into picking up the phone by using false, misleading, and fraudulent caller ID's that are local to the calling area for the Plaintiff's cell phones. These calls were not related to an emergency purpose and were placed without the Plaintiff's consent.

45. The Defendants knew full well that overseas telemarketers were placing calls on their behalf

to consumers across the country pitching debt relief services by overseas telemarketers which was initiated using an automated telephone dialing system and contained a pre-recorded message as Yakim Jordan has been personally sued multiple times in the past for violating the TCPA (See Molitor v Manasseh Jordan Ministries, Inc., 1:16-cv-02106, Northern District of Illinois 2019) and has been cited by the FCC for making illegal robocalls in violation of the TCPA as far back as 2016 (Ex A).

46. The calls also specifically state the Defendant's PO Box in New York is an acceptable address to receive mail and to send payments and state that the calls were being placed by Manasseh Jordan Ministries, but when the Plaintiff made a credit card payment, it was revealed that the money actually went to MJ Ministries Spreading the Gospel. When check payments were sent to the New York address listed on the recording, the funds were actually deposited in a bank account titled in the name of MJ Ministries and not Manasseh Jordan Ministries.

47. Mr. Cunningham has a limited data plan. Incoming calls and text messages chip away at his monthly allotment.

48. Mr. Cunningham has limited data storage capacity on his cellular telephone. Incoming calls from the defendants consumed part of this capacity.

49. No emergency necessitated the calls

50. Each call was sent by an ATDS.

**Liability and direct involvement of Co-defendants Thinq Technologies, dba Commio and Aaron Leon**

51. Plaintiff has identified Thinq technologies as the phone carrier that has been given a warning letter by the FCC for facilitating illegal robocalls and has also been identified by the North Carolina Department of justice for facilitating illegal robocalls to consumers across the coun-

try.

52. Plaintiff has similarly identified Thinq Technologies as the phone carrier involved at the time the Plaintiff recieved the unwanted calls from Yakim Jordan.

53. Aaron Leon is the CEO of Thinq Technologies and he knowingly directed these illegal call campaigns to the extent that Federal regulators took direct action to call him out and threaten to block all incoming traffic from his company if he didn't stop. Aaron Leon knew he was accepting clients who were going to break the law using his services and he sought to profit from these illegal robocalls and improper use of his calling services.

54. Furthermore, Aaorn Leon has attempted to cover up and hide the involvement of his clients as part of his servicers from regulators and litigants making him directly liable for the calls in question. Aaron would regularly ignore subpoenas, lie about his companies involvement in illegal robocalls and generally take all actions to cover up for his client's illegal actions.

### Knowing and Willful Violations of Telemarketing Regulations 47 USC 227(c)(5)

55.  Mr. Cunningham asked for an internal do-not-call policy

56. The Defendants knowingly violated the TCPA by initiating automated calls with pre-recorded messages to the Plaintiff without maintaining an internal do not call policy in violation of 47 CFR 64.1200(d).

57. The Defendants never sent Mr. Cunningham any do-not-call policy in violation of 47 CFR 64.1200(d)(1)

58.  The Defendants placed telemarketing calls without having a written do-not-call policy in place to Mr. Cunningham  in violation of 47 CFR 64.1200(d)(1)

59.  The Defendants placed telemarketing calls to the Plaintiff without training their agents engaged in telemarketing on the existence and use of any do-not-call list in violation of 47 CFR

64.1200(d)(2)

60. The defendants placed telemarketing calls without identifying themselves or the party they were calling on behalf of in violation of 47 CFR 64.1200(d)(4)

61. The Plaintiff recieved calls after the filing of this lawsuit, which is ample notice for any reasonable person to cease placing calls.

**Yakim Manasseh Jordan's Control over the telemarketing calls Robocalling and Telemarketing**

62. At all times relevant to the claims alleged herein, Yakim Manasseh Jordan was in charge of each of these legal entities. Each and every call was placed on behalf of the corporate entites owned by Yakim Manasseh Jordan.

63. Yakim Manasseh Jordan was aware that calls were being placed by or on behalf of his company, via automated, telemarketing calls en masse to people, including Plaintiff.

64. As the defendant's senior-most executive, Yakim Manasseh Jordan had the power to stop these spam campaigns.

65. As the defendant's , senior-most executive, Yakim Manasseh Jordan had the power to fire the managers and employees taking part of the day-to-day operations of these illegal robocalling operations.

66. Instead, Yakim Manasseh Jordanallowed the calls to continue and the responsible managers to keep their jobs—despite his knowledge of frequent do-not-call complaints from recipients of these messages, including the Plaintiff.

**Aaron Leon Control over the telemarketing calls Robocalling and Telemarketing**

67. At all times relevant to the claims alleged herein, Aaron Leon was in charge of each of these legal entities. Each and every call was placed on behalf of the corporate entites owned by

Aaron Leon.

68. Aaron Leon was aware that calls were being placed by or on behalf of his company, via automated, telemarketing calls en masse to people, including Plaintiff.

69. As the defendant's senior-most executive, Aaron Leon had the power to stop these spam campaigns.

70. As the defendant's , senior-most executive, Aaron Leonhad the power to fire the managers and employees taking part of the day-to-day operations of these illegal robocalling operations.

71. Instead, Aaron Leon allowed the calls to continue and the responsible managers to keep their jobs—despite his knowledge of frequent do-not-call complaints from recipients of these messages, including the Plaintiff.

### The Plaintiff's cell phone is a residential number

72. The calls were to the Plaintiff's cellular phone ***-***-1977, which is the Plaintiff's personal cell phones that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phones for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phones registered in his personal name, pays the cell phones from his personal accounts, and the phone is not primarily used for any business purpose.

73. The FCC has defined a residential number as a phone number that is not registered to a business subscriber A "residential subscriber" is "a subscriber to telephone exchange service that is not a business subscriber. " 47 CFR § 64. 2305(d). A "[b]usiness subscriber refers to a sub-

scriber to telephone exchange service for businesses. " 47 C. F. R. § 64. 2305(b)

### Violations of the Texas Business and Commerce Code 305.053

74. The actions of Yakim Manasseh Jordan and the co-defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the defendants corporation violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

75. The calls by the defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### 76. Violations of the Texas Business and Commerce Code 302.101

### (Against All Defendants)

Texas state law requires a telephone soliciter to maintain a license on file with the secretary of state if they make solicitations from Texas or to a purchaser in this state for the business location from which the telephone solicitation is made. A seperate registration certificate is required for each business locaiton from which a telephone solicitation is made. Civil liability for violating this section is $5,000 per call. Plaintiff alleges that none of the defendants maintained a solicitation license in Texas or on file with the secretary of state when these calls were placed.

### I.  FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

   b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

   c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

  8. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

  9. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

  10. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and the defendant's name in the solicitations (3) by placing calls to a number registered on the national do-not-call list.

### III. THIRD CLAIM FOR RELIEF

**(Violations of the Texas Business and Commerce Code 305.053**

**(Against All Defendants)**

  11. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

  12. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce code

---

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

      a.      a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[5]

      b.      training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[6] and,

      c.      in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[7]

13. Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B) and 47 USC 227(b)

14. Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5) and 47 USC 227(b)

15. Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and the defendant's name in the solicitations (3) by placing calls to a number registered on the national do-not-call list.

---

[5] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[6] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[7] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

## IV. FOURTH CLAIM FOR RELIEF

### (Violations of the Texas Business and Commerce Code 302.101

### (Against All Defendants)

16. Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

17. The foregoing acts and omissions of Defendants and their owners/managers constitues multiple violations of the Texas Business and Commerce code 302.101

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Oregon state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individuals

E. An award of $5,000 per call for statutory damages for violations of 302.302

F. An awward of $1500 per call for violations of the Texas Business and commerce code 302.101

G. An award to Mr. Cunningham of damages, as allowed by law under the TCPA;

    H.    An award to Mr. Cunningham of interest, costs and attorneys' fees, as allowed by law and equity

    I.    Such further relief as the Court deems necessary, just, and proper.

*Craig Cunningham*
Plaintiff,    9/8/2023

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| CRAIG CUNNINGHAM,<br>Plaintiff,<br><br>v.<br><br>Manasseh Jordan Ministries, Inc., Bullion Fitness Inc., Kingdom Ministries Church, Inc., Yakim Manasseh Jordan, aka Manasseh Jordan, MJ Ministries Spreading the Gospel, Inc., Steven Sledge, Aaron Jordan, Naomi Cook, John/Jane Does 1-5<br><br>**Defendant** | §<br>§<br>§<br>§<br>§<br>§ ~~4:19-cv-00124-ALM-CAN~~<br>§ 4:23-cv-216<br>§<br>§ |

**Plaintiff's Certificate of Service**

I hereby certify a true copy of the foregoing was mailed and emailed to the Defendants and attorney of record in this case.

*/s/ Craig Cunningham*
Plaintiff,                    9/8/2023

Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075